UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ROBERT DALE ANDREWS and PATTI ANDREWS, ) ) ) | |
| Plaintiffs, ) ) | No. 1:09-0056 |
| v. ) ) | JUDGE ECHOLS |
| HICKMAN COUNTY, et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiffs Robert Dale and Patti Andrews, husband and wife, filed this action under 42 U.S.C. § 1983 alleging violation of their Fourth and Fourteenth Amendment rights. They also brought state-law claims for abuse of process and conspiracy to commit the tort of abuse of process. Plaintiffs named as Defendants Cynthia Primm, Kelly Davis, and Jane Doe, agents of the Tennessee Department of Children's Services ("the State Defendants"); Paul Wade and John Doe, Deputy Sheriffs with the Hickman County Sheriff's Department, and Hickman County.

The State Defendants filed a Motion to Dismiss (Docket Entry No. 14), to which Plaintiffs filed a response in opposition (Docket Entry No. 20). For the reasons stated below, the motion to dismiss will be granted in part and denied in part.[1]

## I. FACTUAL ALLEGATIONS OF THE VERIFIED COMPLAINT

Plaintiffs alleged in their verified Complaint (Docket Entry No. 1), that they are current residents of Davidson County, Tennessee. At the time of the events at issue, however, they resided in Hickman County, Tennessee, with their four minor children: Sarah, 17; Rebecca, 16; Wendellyn, 14; and Abigail, 13. The Plaintiffs are parents of eighteen living children, but all of the other children had reached the age of majority and were no longer residing in the home. Plaintiffs

---

[1]By Agreed Order of Dismissal (Docket Entry No. 28) entered on December 17, 2009, Hickman County Sheriff's Department was dismissed as a party defendant because the Sheriff's Department is not a legal entity separate from Hickman County.

alleged that, before the incident described in the Complaint, they had never been accused of (nor had they committed) any abuse against any child in their care and custody. (Complaint ¶¶1-2, 13.)

On or about August 27, 2008, at approximately 8:30 p.m., Deputy Sheriffs Wade and Doe, both uniformed and armed, arrived at the rear of the Plaintiffs' home in a marked car. (Id. ¶¶ 6-7, 13-14.) At the same time, another car also pulled up to the Plaintiffs' residence and three females, Defendants Primm, Davis and Doe, got out of the car. All three women identified themselves as agents with the Department of Children's Services. (Id. ¶¶ 14-15.)

The five individuals approached Dale Andrews. The two deputies identified themselves to Mr. Andrews and informed him that the women from Human Services wanted to speak to him. Mr. Andrews was not given any information about charges against him or his wife, nor was he informed of any imminent harm to which his children might be exposed. (Id. ¶ 16.)

As the women approached Mr. Andrews, he turned to enter the house, but one of the deputies refused to allow him to enter his own home. Plaintiff Patti Andrews came to the door. (Id. ¶¶ 16-17.) All five individuals then entered the home behind Mr. Andrews without a warrant. Upon entering, the three women demanded to interview the children separately. Mrs. Andrews complied with the request under the information and belief that the deputies would exercise their authority if she refused to follow their command. Defendant Primm then demanded that she have access to the entire home to look into each room. Defendants Primm and Davis demanded to see any weapons and ammunition that were located in the home. Defendant Jane Doe participated in the search of the home. (Id. ¶ 18.)

Each child was isolated from her parents and required to speak to the agents of the Department of Children's Services. Each child was told she had to answer questions, even if the child deferred the question to the parents. (Id. ¶ 19.)

At no time did the Defendants identify any act that may have occurred that placed any child at risk of harm. There were no arrests, charges, or other actions taken by the Department as a result of the intrusion. (Id. ¶¶ 20-21.) If not for the imposed authority from the Hickman County Sheriff's

Department, the Plaintiffs would not have allowed entry into their home nor would they have allowed interference with their parental privacy interest. (Id. ¶ 22.)

Plaintiffs allege that the five individuals' entry into their home without a warrant or any showing of immediate and irreparable risk, harm, or threat of harm to the children amounted to an unconstitutional search and the interrogation of the children amounted to an unconstitutional seizure in violation of the Fourth Amendment. They also allege that the Defendants' actions violated the parents' liberty interest and the family's privacy interest under the Fourteenth Amendment. (Id. ¶¶ 23-30 (Count I).) Plaintiffs further allege that the Defendants' actions amounted to the tort of abuse of process and a civil conspiracy to commit the tort. (Id. ¶¶ 31-37 (Count II).) Plaintiffs also allege that Hickman County knew or should have known that the Deputy Sheriff Defendants would use their authority to obtain an unlawful entry into the Plaintiff's home and that such conduct is the custom of the Hickman County Sheriff's Department. As such, Hickman County should be held responsible for the acts of the Deputy Sheriffs. (Id. ¶¶ 38-41 (Count III).) Finally, Plaintiffs allege that the named Defendants are not protected by qualified immunity because their acts were unreasonable and in violation of clearly established law. (Id. ¶¶ 12, 25, 33.) Plaintiffs seek compensatory and exemplary damages of $1 million. They also seek declaratory and injunctive relief, attorney's fees and costs.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations made in the Plaintiffs' verified Complaint and construe the allegations in the Plaintiffs' favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." Id. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

### III. ANALYSIS

The State Defendants move to dismiss on the grounds that they are entitled to sovereign immunity and/or qualified immunity from suit for money damages, the Complaint fails to state a claim against them for any civil rights violation, and the state-law claims should be dismissed for lack of jurisdiction or failure to state a claim. The Court will address each of these issues in turn.

**A. Immunity**

*1. Official capacity suit*

It is well-established that neither a State nor a state officer acting in her official capacity may be sued for money damages in federal court unless the State has waived its Eleventh Amendment sovereign immunity or some other exception to sovereign immunity applies. Edelman v. Jordan, 415 U.S. 651, 664-666 (1974); S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008). For purposes of sovereign immunity, a suit against a state official in her official capacity is a suit against the official's office and is, therefore, a suit against the state itself. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Thus, a state official may not be sued in her official capacity for money damages. Id.

In response to the motion to dismiss, Plaintiffs agree that the State Defendants enjoy sovereign immunity from money damages to the extent they are sued in their official capacity; they point out that the Complaint also prays for declaratory and injunctive relief against these Defendants. Because there is no dispute between the parties and the law is clear, Defendants' motion to dismiss the claims for money damages brought against the State Defendants in their official capacity will be granted.

4

Case 1:09-cv-00056   Document 31   Filed 01/26/10   Page 4 of 11 PageID #: 152

*2. Individual capacity suit*

Social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty and so they are entitled to absolute immunity for such acts. Achterhof v. Selvaggio, 886 F.2d 826, 830 (6th Cir. 1989). Social workers who engage in purely investigative or administrative acts are entitled only to assert qualified immunity. Id.

The Complaint alleges that there were not any judicial proceedings brought against the Plaintiffs after the entry of the home and interview of the Andrews children by the Defendants. Thus, absolute immunity is not at issue in this case.

The State Defendants are sued for money damages in their individual capacity, and they assert they are entitled to qualified immunity for their actions because they were conducting an investigation into child abuse based upon a referral received by the Department of Children's Services. (Docket Entry No. 15, Memorandum at 10.) This mere representation in the brief as to the reason for the State Defendants' actions is not supported by an affidavit and it is outside the scope of the information the Court may properly consider on a Rule 12(b)(6) motion to dismiss. The Court is limited to consideration of the allegations of the Complaint, and the Complaint itself does not specifically allege that the State Defendants went to the Andrews home to investigate an allegation of child abuse or neglect based on a referral. Plaintiffs themselves likely did not know why the Defendants came to the house to search it and interview the children, and the Plaintiffs can only plead facts within their personal knowledge. The Complaint reveals that the State Defendants asked to see any weapons and ammunition kept in the home, but no further light is shed on why this request was made. The Court can reasonably infer from the limited allegations in the Complaint that the State Defendants went to the Andrews home to conduct some type of child abuse or neglect investigation, but the Court cannot assume facts beyond those contained in the four corners of the Complaint as drafted.

5

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, — U.S. —, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine balances two important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Because qualified immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously allowed to go to trial. Id. Thus, the Supreme Court emphasizes that the driving force behind the doctrine is a desire to ensure that insubstantial claims against government officials are resolved prior to discovery, and lower courts are repeatedly counseled to resolve immunity questions at the earliest possible stage in the litigation. Id.

To determine if qualified immunity applies, the Court must consider a two-step process. First, the Court must decide whether the facts the Plaintiffs have alleged make out a violation of a constitutional right. Second, if the Plaintiffs have satisfied the first step, the Court must decide whether the right at issue was "clearly established" at the time of the Defendants' alleged misconduct. Id. at 815-816. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Id. While application of this two-step process in sequence is often appropriate, beginning with the first prong is no longer considered mandatory. Id. at 818. The Court may exercise its sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case. Id.

The Court opts to begin with the first prong of the qualified immunity analysis: whether Plaintiffs have alleged in their Complaint violations of their constitutional rights. The Court concludes that they have.

According to Plaintiffs' allegations, which the Court takes as true for purposes of the motion to dismiss, the State Defendants–three female agents of the Department of Children's Services, arrived at the Andrews home at 8:30 in the evening accompanied by two sheriff's deputies. The State Defendants and sheriff's deputies did not possess a search warrant to enter the Andrews home, nor did they verbally identify any exigent circumstances to justify a warrantless entry into the home. Patti Andrews allowed the five individuals to enter the home, to speak to the children, and to search the various rooms only because she felt coerced to do so by the presence of the sheriff's deputies and because she believed the Defendants would exercise their authority to force entry into the home, search it, and speak to the children if she did not acquiesce to their demands.

A warrantless search of a home is generally unconstitutional, and the need for a warrant is eliminated only if an individual with authority to do so voluntarily consents to a warrantless search, Saltsman v. Campbell, 145 F.3d 1333, 1998 WL 252758 at *3 (6th Cir. May 12, 1998) (social workers and police officers entered home based on mother's voluntary consent), or there are exigent circumstances justifying the warrantless search. Jordan v. Murphy, 145 Fed. Appx. 513, 518 (6th Cir. 2005) (social worker entered home with police officers based on police officers' prior determination that children were in imminent physical danger). The Complaint in this case does not establish that there were any exigent circumstances to justify the warrantless entry of the Andrews home. In fact, the contrary is true because the Plaintiffs allege the Defendants did not give them any information about charges against them or identify any act that may have occurred to place any of the children at imminent risk of harm. Moreover, to be valid, consent must be freely and voluntarily given within the totality of the circumstances. Saltsman, 1998 WL 252758 at * 3. Here, Plaintiffs allege that Patti Andrews' consent was not freely and voluntarily given, but that she was coerced to permit the Defendants' entry by the presence of two uniformed and armed law enforcement officers and three agents from the Department of Children's Services.

These facts as alleged support a classic formulation of a Fourth Amendment constitutional claim for unlawful search and seizure. See Jordan, 145 Fed. Appx. at 518, 524. In addition, the

7

same facts as alleged support Fourteenth Amendment substantive due process claims for invasion of the parents' liberty interest in the custody of their children and the family's right to privacy. See Williams v. Pollard, 44 F.3d 433, 434-435 (6th Cir. 1995); Smith v. Williams, 173 Fed. Appx. 363, 366 (6th Cir. 2005).

Turning to the second prong of the qualified immunity analysis, the Court must consider whether the contours of the rights the Plaintiffs claim were violated were sufficiently clear that a reasonable official would understand that her actions violate those rights. See Jordan, 145 Fed. Appx. at 517. The objective legal reasonableness standard requires the Court to analyze whether a case worker in the State Defendants' position objectively would have understood that she was under an affirmative duty to have refrained from such conduct. Id.

The law was well-established in this and other circuits long before 2008 that social workers and law enforcement officers are required to abide by the constraints of the Fourth Amendment in conducting child abuse and neglect investigations. See Williams, 44 F.3d at 434-435 (Fourteenth Amendment rights); Jordan, 145 Fed. Appx. at 518, 524 (Fourth Amendment rights). See also e.g. Good v. Dauphin County Soc. Servs. For Children And Youth, 891 F.2d 1087, 1092 (3rd Cir. 1989) (holding contours of the Fourth Amendment right to deny social worker and police officer entry to home unless in possession of a warrant, with valid consent, or in exigent circumstances was sufficiently well established in 1987); Doe v. Heck, 327 F.3d 492, 509-515, 517 (7th Cir. 2003) (explaining long-standing law on Fourth and Fourteenth Amendment claims in context of social worker/police investigations). Based on the factual allegations of the Complaint, an objectively reasonable social worker in the position of the State Defendants would have understood that she was under a duty not to enter the Andrews' home to search and interview the children unless she had a warrant or court order, she obtained voluntary consent of the parents, or she knew that exigent circumstances existed to justify a warrantless entry. Thus, on this record, which is limited only to the Complaint, the State Defendants are not entitled to qualified immunity.

8

Whether it was objectively reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials. See Good, 891 F.2d at 1092. It may be that the State Defendants can produce evidence that they indeed had a search warrant or court order, or that they received valid consent to enter the premises, or that they possessed knowledge of exigent circumstances to justify a warrantless entry of the Andrews home to search and interview the children in isolation from their parents. The State Defendants may be able to show that they did not act with deliberate indifference to protected liberties. Such facts, however, are not before the Court at this time. Thus, the State Defendants are free to assert entitlement to qualified immunity again at a later stage of the litigation based upon a more complete factual record. See Smith v. Williams-Ash, 173 Fed.Appx. 363, 367 n.1 (6th Cir. 2005).

**B. Failure to state a claim**

The State Defendants contend that the Plaintiffs fail to state Fourth and Fourteenth Amendment claims against them. This contention must be rejected. The Court concluded in the first step of the qualified immunity analysis that the Plaintiffs state Fourth and Fourteenth Amendment claims against the State Defendants based on the facts alleged in the Complaint. Therefore, the State Defendants are not entitled to dismissal of the federal claims under Rule 12(b)(6).

**C. State-law claims for abuse of process and civil conspiracy to commit abuse of process**

Having determined that the federal claims will proceed, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to consider the Plaintiffs' state law claims for abuse of process and civil conspiracy to commit abuse of process. The gist of the tort of abuse of process "'is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish.'" Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383, 400 (Tenn. 2002). "In its most basic sense, therefore, an action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's

9

process as a weapon 'to compel [another party] to pay a different debt or to take some action or refrain from it.'" Id. at 401 (quoting *Restatement (Second) of Torts § 682 cmt. b (1977)*). Thus, to recover for abuse of process, the Plaintiffs must establish two elements by evidence: (1) the existence of an ulterior motive and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. Id. at 400.

In this case, Plaintiffs have alleged neither. Plaintiffs did not allege that the State Defendants pursued process against them; in fact, Plaintiffs alleged just the opposite: that there "were no arrests, charges, or other actions taken by the Department as a result of this intrusion." (Complaint ¶ 21.) Plaintiffs also did not allege that the State Defendants acted with an ulterior motive. Consequently, Plaintiffs have not alleged the gist of the tort of abuse of process, which is the act of misusing or misapplying process that is justified in itself for an end other than that which it was designed to accomplish. Because Plaintiffs have not stated a claim for abuse of process, they also cannot state a claim for civil conspiracy to commit the tort of abuse of process. See Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002) (listing elements of civil conspiracy as: combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff). Thus, neither the claim of abuse of process nor the claim of civil conspiracy to commit the tort of abuse of process can proceed. These state-law claims will be dismissed with prejudice.

## IV. CONCLUSION

For all of the reasons stated, the State Defendants' motion to dismiss under Rule 12(b)(6) will be granted in part and denied in part. The motion will be granted to the extent that the State Defendants may not be held liable in their official capacity for money damages and Plaintiffs have failed to state a claim for abuse of process or civil conspiracy to commit abuse of process. The state-law claims will be dismissed with prejudice. The motion to dismiss will be denied on the issue of qualified immunity. Plaintiffs have stated constitutional claims under the Fourth and Fourteenth

10

Amendments against the State Defendants in their individual capacity and, based on the allegations of the Complaint, the State Defendants are not entitled to qualified immunity. The State Defendants are free to renew the qualified immunity issue in a motion for summary judgment filed at the appropriate time if the State Defendants can supply a proper factual basis to permit application of the doctrine of qualified immunity.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE