IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ROBERT DALE ANDREWS and<br>PATTI ANDREWS,<br><br>    Plaintiffs,<br><br>v.<br><br>HICKMAN COUNTY, TENNESSEE, et al.,<br><br>    Defendants. | Case No. 1:09-cv-0056<br>Judge Trauger |

# MEMORANDUM

Pending before the court is a Partial Motion for Summary Judgment filed by defendant Paul Wade (Docket No. 76), to which the plaintiffs, Robert Dale Andrews and Patti Andrews, have filed a Response in opposition (Docket No. 79). For the reasons discussed herein, the defendant's motion will be denied.

# BACKGROUND

## I. Overview[1]

On August 26, 2009, plaintiffs Robert Dale Andrews and Patti Andrews filed suit against Hickman County, Tennessee, three Tennessee Department of Children's Services ("DCS")

---

[1] Unless otherwise noted, the facts are drawn from the plaintiffs' Response to Defendant's Statement of Undisputed Material Facts, the plaintiffs' Additional Undisputed Facts in Response to the Summary Judgment Filed by Paul Wade, (Docket No. 79, Exs. 2-3), as well as related testimony and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

employees (the "State Defendants" or the "DCS employees"), and two Hickman County police officers, Paul Wade and an unidentified "John Doe" officer, alleging violations of their Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and various state-law claims stemming from events surrounding a visit to their home on August 27, 2008. At this stage, only one defendant, Wade, remains in the case.[2] Wade has moved for summary judgment on the Andrews' claim for punitive damages.

## II. Procedural Background

On October 25, 2010, this court issued an Order granting summary judgment to Hickman County and denying in part and granting in part summary judgment to both the State Defendants and Wade. In a memorandum accompanying the Order, the court concluded, *inter alia*, that the State Defendants (who are social workers) and Wade were not entitled to qualified immunity from the Andrews' Section 1983 claims grounded in the Fourth Amendment. (Docket Nos. 58-59.) Following the Order, the State Defendants and Wade submitted interlocutory appeals to the United States Court of Appeals for the Sixth Circuit. On December 3, 2012, the Sixth Circuit issued an Order in which it affirmed this court's decision as to defendant Wade but reversed the decision as to the State Defendants after concluding that the State Defendants were shielded from the plaintiffs' claims by qualified immunity.

---

[2] The "John Doe" defendant was dismissed from the case on February 10, 2010, because the plaintiff failed to identify the correct party before the expiration of the statute of limitations. (Docket No. 34 at 5-6.) Hickman County was dismissed from the action by the court on October 25, 2010. (Docket No. 59.) The claims against the State Defendants were dismissed by mandate from the Sixth Circuit on December 3, 2012. (*See* Docket Nos. 68-69.)

2

Both the Sixth Circuit's Order and this court's memorandum accompanying the October 25, 2010 Order provided a thorough overview of the facts of this dispute. (*See* Docket Nos. 58, 68-69; *see also Andrews v. Hickman County, et al.*, Case No. 10-6464, 700 F.3d 845 (6th Cir. 2012).) The court incorporates these factual findings by reference into this Memorandum and, for the purpose of providing context, will briefly summarize the events giving rise to this litigation below.

### III. Events Giving Rise to the Litigation

Around August 12, 2008, Kelly Davis, an assessment worker at DCS, received a referral regarding allegations of child abuse that had been lodged against the Andrews. The Andrews are the parents of 18 children, and, at the time of the events relevant to this suit, resided with four of their daughters in Hickman County, Tennessee. Because the original referral identified an incorrect address for the Andrews, Davis was unable to follow up on the report until August 27, 2008, when the original referent and a new referent visited her office to file an additional official referral of abuse against the Andrews. After receiving the Andrews' correct address, Davis conferred with her supervisor, who instructed Davis to visit the home that same day. DCS requested law enforcement to assist with the visit, and ultimately, three DCS workers (Davis, Cynthia Primm, and Monica Wright) and two Hickman County Police Officers (Deputy Kyle Chessor and Wade) drove in separate vehicles to the home around 8:30 PM on August 27, 2008.

Defendant Wade was employed by Hickman County as a reserve police officer, which is essentially an officer in training. Wade and Chessor received a call from dispatch to "assist" DCS on the night of August 27, 2008, and, armed and in uniform, they met the DCS employees in a parking lot near the Andrews home before driving to the house. Wade testified that he was

3

sitting in the passenger seat of Deputy Chessor's vehicle at the time that DCS was providing Deputy Chessor with background on the Andrews referral and, consequently, Wade did not understand "a lot of what was going on."

Mr. Andrews was outside when the defendants arrived. The officers approached Mr. Andrews and informed him that the DCS employees wanted to interview his children. The officers allegedly "got a little hostile" with Mr. Andrews, and one of the officers told Mr. Andrews that he could not enter his house unaccompanied by an officer. Because his family had previously experienced an encounter with an individual who was disguised as a police officer, Mr. Andrews explained that he wanted to go inside to confirm the officers' identities and, given the late hour of the visit, Mr. Andrews asked the officers to remain outside because he was not certain if his daughters inside were bathing.

Mr. Andrews entered his house through a back door to ask his wife to call a contact in the sheriff's office to confirm that Deputy Chessor and Wade were lawfully dispatched. The Andrews claim that, immediately after Mr. Andrews entered his home, an officer followed Mr. Andrews into the house, closely followed by the three DCS employees, and then another officer.

Wade's account of the entrance into the home differs from that of the Andrews. Wade claims that he remained outside the home while Mr. Andrews went inside through the back door, that both Mr. and Mrs. Andrews then came outside, and that the entire party walked around to the front of the house. According to Wade, the party then entered the house through the front door, with the exception of Wade, who remained on the front porch except when he stepped inside and "watched what was going on for a few minutes" before stepping back outside.

4

Once the defendants were inside the home, the State Defendants individually interviewed the Andrews children with the Andrews' permission. The Andrews claim that they granted permission for the interviews because of the presence of the officers and because they feared arrest or losing their children if they were to deny the request. At the conclusion of the interviews, the officers left the home after the State Defendants indicated that they were comfortable remaining at the house unaccompanied.

It is undisputed that Mr. Andrews made an initial request that the DCS employees and officers remain outside while he went inside his home to speak with his wife. It is also undisputed that the officers and the State Defendants entered the Andrews home without a warrant. Finally, it is also undisputed that, besides Mr. Andrews' initial request, the Andrews did not ask the officers to leave their property and did not object to their presence after the defendants had entered the house.

## ANALYSIS

### I. Rule 56 Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving

party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986). An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. Wade's Summary Judgment Motion

Wade argues that he is entitled to partial summary judgment as to the Andrews' claim for punitive damages. Specifically, he contends that he is entitled to a judgment as a matter of law because the plaintiffs' version of events does not establish "evil intent" or "callous disregard" as required for punitive damages claims under Section 1983. In support of his motion, he submits a Statement of Undisputed Material Facts. The plaintiffs oppose Wade's motion and have submitted an additional statement of material facts. (Docket Nos. 78, 79, Exs. 2-3.)

### A. Punitive Damages Pursuant to Section 1983

It is well settled that punitive damages are available in a Section 1983 action. *See, e.g.*, *Smith v. Wade*, 461 U.S. 30, 51 (1983); *Brown v. Brown*, 46 Fed. App'x 324, 324 (6th Cir. 2002); *Walker v. Norris*, 917 F.2d 1449, 1459 (6th Cir. 1990). The Supreme Court has provided guidance as to the requisite elements for a punitive damages claim under Section 1983, instructing that "reckless or callous disregard for the plaintiff's rights, as well as intentional

6

violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." *Id.* The Court continued that a jury should assess a defendant's "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others" and emphasized that, even if this standard were met, the jury must also determine whether the defendant's conduct is "of the sort that calls for deterrence and punishment over and above that provided by compensatory awards" before awarding punitive damages. *Id.* at 54-56.

The Sixth Circuit has elaborated on this standard, explaining that it "does not require egregious or outrageous behavior" but is "based on the defendant's state of mind" and can be tied to "improper motive" or "reckless indifferen[ce]" to an individual's due process rights. *Brown*, 46 Fed. App'x at 324; *see also Preferred Props., Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002) (assessing identical punitive damages standard under the Fair Housing Act), *cert. denied*, 536 U.S. 959 (2002).

**B. A Genuine Issue of Material Fact Exists as to Wade's State of Mind**

Contrary to Wade's arguments, there remain genuine issues of material fact regarding Wade's "subjective belief[s]" as he was entering the Andrews home. Consequently, Wade has not demonstrated that no jury could reasonably find that punitive damages are appropriate in this case.

Wade submits that the undisputed facts establish that he, Deputy Chessor, and the State Defendants arrived at the Andrews home to conduct an assessment based on a referral regarding child abuse. Although instructed not to enter the house, it is undisputed that the DCS employees and the police officers indeed entered the home. Relying on an Eastern District of Tennessee

7

district court opinion, Wade argues that a punitive damages claim is inappropriate because the facts do not suggest that the officers drew their weapons, damaged property, or threatened the Andrews with violence. (Docket No. 78 at 7 (citing *Arbuckle v. City of Chattanooga*, 696 F. Supp. 2d 907 (E.D. Tenn. 2008).) Wade argues that, because the facts here do not suggest violence or threats, there can be no genuine issue of material fact as to whether Wade acted "intentionally or recklessly with respect to the Andrews' federally protected rights." Wade's contention, however, is without merit because it ignores the appropriate analysis for punitive damages. The Supreme Court and the Sixth Circuit do not require allegations of violence, threats, or weapons to set forth a punitive damages claim; the standard requires only a subjectively improper motive or disregard for an individual's constitutional rights.

Wade also relies heavily on his assertion that, as a reserve officer with little context for the situation, Wade did not "understand" much of what was going on at the Andrews residence and, therefore, could not have possessed the subjective belief that, by entering the Andrews home, he was intentionally or recklessly violating the Andrews' rights. (Docket No. 77 at 7 (quoting *Kovacic v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 809 F. Supp. 2d 754, 794 (N.D. Ohio Aug. 25, 2011) ("To prove reckless indifference, requires evidence that the defendant acted 'in the face of a perceived risk that [his or her] action [would] violate federal law.").) This argument fails. Indeed, Wade's assertion that he is innocent as a result of his naiveté undermines his contention that his motive in entering the house was proper. Unlike the case that Wade relies on, *Kovacic*, Wade does not submit any justification for entering the Andrews home. *See* 809 F. Supp. 2d at 793 (granting *unopposed* motion to dismiss punitive damages claim where social worker defendants genuinely believed that children were at risk of

8

imminent harm when they unlawfully entered a home) (emphasis added). He fails to assert facts to show that, at any point, he believed that there were exigent circumstances that entitled him to enter the home or that he had consent to enter the home.

Nevertheless, despite his alleged ignorance as to the purpose of the DCS assessment and his admission that he knew that Mr. Andrews was unhappy at the defendants' presence, Wade entered the Andrews home without a warrant. The contradictions related to what Wade says that he knew, what he says he recalls, and his undisputed actions—specifically, his warrantless entry of the Andrews home—raise reasonable questions as to the propriety of Wade's subjective beliefs at the time that he entered the home.

Finally, in an attempt at absolution, Wade appears to suggest that, because he was under Deputy Chessor's supervision and subject to a chain of command as a "reserve officer," he cannot be found to have acted with intentional or reckless indifference towards the plaintiffs' federal rights. This suggestion is both erroneous and meritless. Wade has testified that, in addition to his reserve officer work, he possessed nearly four years of experience as a deputy in nearby Dickson County, Tennessee prior to the incident in August 27, 2008. Surely, he was familiar with the Fourth Amendment at the time of his warrantless entry into the Andrews home. Given the genuine issue of material fact as to Wade's state of mind during his visit to the plaintiffs' home, a reasonable jury could conclude that Wade possessed a reckless or callous indifference to the Andrews' Fourth Amendment rights on that evening in 2008. Accordingly, Wade's motion will be denied as to the punitive damages claim.

## **CONCLUSION**

For the reasons discussed herein, the defendant's Motion for Partial Summary Judgment will be **DENIED**. Following the presentation of evidence at trial, the court, upon proper motion, will determine whether or not to submit the issue of punitive damages to the jury.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge